MAYOR AND ALDERMEN OF HUNTINGDON *v.* W. M. MULLINS *et al.*

1. REFEREES. *Report of. Exceptions to.* Exceptions to the report of the court of Referees will not be noticed unless filed in strict conformity to the act creating that court.

2. WILLS. *Life use in lands.* The fourth clause of the will of W. devises to certain heirs of P. a tract of land containing sixty-five acres, and then adds seven or eight smaller tracts, describing them, concluding the clause thus: " The whole amounting to two hundred and ninety acres, which I value at," etc. By the next clause he provides: " I give and bequeath to P. the right to live upon the land which I have given to his children, named above, being the place where he now lives, during his natural life." *Held,* that P. had a life use in the entire property included in the above clause, and was not limited to so much as he actually occupied.

FROM CARROLL.

Appeal in error from the Circuit Court of Carroll county. CLINTON ADEN, J.

ALONZO HAWKINS for Mayor and Aldermen.

HAWKINS & TOWNES for Mullins.

FREEMAN, J., delivered the opinion of the court.

This case is before us on exceptions to the report of the Referees, which exceptions were intended to open the whole case. It is an action brought by plaintiffs, originally before a justice of the peace, to recover the price of land claimed by them to have been theirs, the same having been taken and appropriated as a street or streets by the authorities of the town. On looking at the exceptions filed, we are compelled to disregard them, or the act of 1883, creating the commission of Referees.

The first is, in substance, that the land was taken or appropriated, and that the charter did not authorize the appropriation, but there is no reference to the page of the record on which it is found. In fact, all the exceptions filed make the mistake, by oversight, we assume, of referring simply to the pages of the report instead of to the record. The brief accompanying the exceptions does not refer either to a page of the record or an authority. The statute requires either party filing exceptions to point out "definitely the error or errors complained of in the report, and to accompany this with a brief, citing, in most concise manner, the specific testimony relied upon, designating the page of the record as well as authorities relied on," and adds, " no exceptions shall be taken to such report unless filed as above prescribed." We can not,

therefore, notice the exceptions of plaintiff in error, the mayor and aldermen.

The Referees report in favor of a reversal of the judgment in favor of the plaintiffs, and that the case be remanded, on the ground that the claim was barred by the statute of limitations of six years, it being for a money demand. This is the only question that need be noticed, though the exceptions filed by plaintiffs below raise several others, and are in conformity with the statute in every respect.

The question, as ruled by the Referees, depends on the language and construction of the will of C. S. Wood, as it is conceded that if the father of Mrs. Fly, W. C. Peoples, took an estate or right in this land for life, then Virginia Fly was not seized in her lifetime of the land so that the husband's right of courtesy would attach, and he be a necessary party to recover the price of the land in connection with the plaintiffs.

By the fourth clause of the will of C. S. Wood, he gives to Virginia Fly, formerly Virginia Peoples, Ann Thomas Peoples and Coriana Peoples, a tract of land containing sixty five acres, and then adds, in the same way, seven or eight other smaller tracts, describing them, and referring to the deeds under which he held, concluding the clause with the language, "the whole amounting to about two hundred and ninety acres, which I value at $2,500."

By the next article of the will he provides, "I give and bequeath to Wm. C. Peoples, the right to live upon the land which I have given to his chil-

dren named above, being the place where he now lives, during his natural life."

The facts seem to be, that W. C. Peoples was a son-in-law of C. S. Wood, and was living on one of the tracts of land at his death, and had been cultivating and using all of it for a number of years, including the small tract now in controversy, out of which the streets were taken. The other tracts seem to have been contiguous to each other, but this small tract was about three or four hundred yards from the other lands, and from a half to three-quarters of a mile from Peoples' house, or the house in which he lived.

The court charged the jury, in reference to the contention of defendants, that while, by the above will, Peoples was given the "right to live on the lands devised to plaintiffs, that the land in controversy was not intended to be so used by Peoples, and constituted no part of the bequest (devise) to Peoples by Wood, but that this land was a separate tract, and that if the proof showed J. V. Fly, who married the daughter of Peoples, who died, having issue born alive by her husband, and he was twenty-one years of age at the time of condemnation (as he was), the plaintiffs right of action would be barred, and a verdict should be returned for defendants, unless you find that it was the intention of the testator, Wood, by his will, to include the land in controversy as being a part of the land whereon said Peoples then lived." If so, he then held that, "if Peoples died subsequent to his daughter, Mrs. Fly (as he did), so entitled to the use

and occupation of the land in controversy, and the condemnation took place after his death, the present plaintiffs, all being minors, and this action brought within three years after the youngest child became of age, then plaintiffs were entitled to recover. It is seen in this he has held the devise in the will to be a life estate in Peoples, and has left it to the jury to decide whether this tract in controversy was intended to be included in that devise. The jury have evidently found it was so intended, and so found for the plaintiffs.

The Referees say this finding by the jury was wrong, and that the right to occupy or live upon the land given to Peoples' children was limited to that upon which he then lived, and as he never, in fact, actually lived on this particular little tract, that he had no estate in it, and J. V. Fly, the husband of Mrs. Fly, was tenant by the courtesy, as he would not have been if Peoples had life estate, or, as they assume, the right to live on this land. They therefore report in favor of a reversal, because Fly, at the date of condemnation, was joint owner of the land, to the extent of his courtesy right, with his children, and being of age when the right accrued, he is barred, and so his other joint owners, his children, are barred under our decisions, the suit being to recover a personal demand, the price of land jointly owned in this way by the parties, the right to the price is a joint demand, and so they report in favor of a reversal.

We have carefully considered the question as to whether the Referees' report properly construes the

Mayor, etc., of Huntingdon *v.* Mullins.

will of C. S. Wood, and conclude they are wrong in their conclusion. We think the testator meant to give a right to use and occupy by Peoples, the father, all the land included in the previous clause to his children, in the same way as he was then doing, had been for years, and continued to do till his death. The fact that his house was not on it does not meet the question; the whole devise of the land is treated by the testator as one gift, and to this gift is annexed the life use by the father, W. C. Peoples.

This being the turning point in the case, the judgment below is affirmed, and the report of the Referees disapproved.